UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-01208-TBR

SAMUEL SMITH and BETTY SMITH                                                     Plaintiffs

v.

PPG INDUSTRIES, INC,                                                             Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (Docket No. 32). The Plaintiffs have replied, (Docket No. 34), and the Defendant has responded, (Docket No. 35). This matter is now ripe for adjudication. For the following reasons, the Court will **GRANT** the Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiffs Samuel Smith ("Mr. Smith") and Betty Smith bring this lawsuit against PPG Industries, Inc. ("PPG") for negligence and loss of consortium. The Plaintiffs allege that on October 17, 2012, Mr. Smith suffered severe injuries when an industrial scale weighing approximately 100 pounds fell off of a forklift and struck him in the head. The scale was on a forklift, which caught on a platform, propelling the industrial scale forward. The accident occurred during the installation of a caulk line at PPG's Olympic Stain facility, which had been previously located at PPG's Porter Paint facility.

Before the time of the accident, Mr. Smith had worked for PPG's Porter Paint facility for 14 years as a machine operator and as lead man on second shift. As a machine operator, he operated a variety of industrial equipment and machines on the paint line and the caulk line. He consulted with employees about problems that arose during the process. His responsibilities as

1

lead man were to ensure that schedules set by the supervisors were followed and that work was completed.  According to Mr. Smith, PPG staff performed most maintenance at the plant unless it was a large project that required supplementing the workforce.  The same was true with moving equipment, unless it was large like a product line.  In his employment at PPG, Mr. Smith frequently moved scales and pumps because they were on rollers and easy to move.

In August of 2012, PPG closed the Porter Paint facility and terminated Mr. Smith's position.  PPG also decided that the caulk line at the Porter Paint facility should be transferred to the Olympic Stain facility.  The line consisted of several large pieces of equipment including a caulk mixer and a caulk filler.  Caroline Smith ("Ms. Smith"), the Plant Manager, asked Mr. Smith if he would be interested in a temporary job to help set up the caulk line.  He agreed, and was employed by a temporary employment agency, Randstad.  Ms. Smith asked Mr. Smith to help operate the caulk line and to train another employee at the PPG facility about the operation of the caulk line.  Mr. Smith stated that he knew what he was doing when he got there because he had performed those jobs before.

Mr. Smith was hired as a temporary employee rather than as a full time employee because the Olympic Stain facility was a union facility and he did not want to give up his severance and start as the "low man" there.  (Docket No. 32-2).  Ms. Smith also hired PPG employee Robert Ashley through a temporary agency.  She charged Mr. Smith and Mr. Ashley with making sure the line operated efficiently after the contractors moved the larger equipment.

As a result of his injuries, Mr. Smith applied for and received workers compensation benefits from Randstad.  PPG has filed a Motion for Summary Judgment, arguing that Kentucky's "up-the-ladder" immunity doctrine renders it immune from liability in this circumstance. (Docket No. 32).

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**DISCUSSION**

PPG argues that the Plaintiffs' claims are barred by Kentucky's Workers' Compensation Act, specifically KRS 342.690 and KRS 342.610. (Docket No. 32). KRS 342.690 provides that "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . ." The statute states that an "employer" includes "a 'contractor'

3

covered by subsection (2) of KRS 342.610." KRS 342.610(2), in turn, defines a "contractor" as "[a] person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." Together, these provisions "form the basis for what is known as the 'up the ladder' defense: an entity 'up the ladder' from the injured employee and who meets all the qualifications of a 'contractor' under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690." *Davis v. Ford Motor Co.,* 244 F. Supp. 2d 784, 786 (W.D. Ky. 2003).

PPG argues that it is a statutory employer under the definition found in KRS 342.610, as the work that Ms. Smith was doing at the time of the accident was a "regular or recurrent" part of its business. (Docket No. 32). Mr. Smith asserts that PPG does not have "up the ladder" employer immunity under KRS 342.690 as the work that Mr. Smith was engaged in at the time of the accident was not a regular and recurrent part of the work. (Docket No. 34). Thus, the issue is whether Mr. Smith's work was a regular or recurrent part of PPG's business.

In *General Electric Co. v. Cain*, 236 S.W.3d 579 (Ky.2007), the Kentucky Supreme Court explained the factors used to determine whether a particular activity is a "regular or recurrent" part of an employer's business within the context of KRS 342.610(2). Regular or recurrent activities are "customary, usual, or normal to the particular business (including work assumed by contract or by law) or work that the business repeats with some degree of regularity, and is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Cain*, 236 S.W.3d at 588. This test is relative, not absolute. *Id*. This issue is a mixed question of fact and law for the Court to decide. *Id.* at 589. The conclusion that a defendant is entitled to summary judgment "must be supported with substantial evidence that a defendant was the injured worker's statutory employer under a correct interpretation of KRS

4

342.610(2)(b)." *Id*. at 585. Further, while not conclusive, courts typically consider expensed costs to be regular and recurrent expenses and capitalized costs to be outside the scope of regular and recurrent work. *Id.* at 588.

  The court in *Cain* addressed summary judgment motions filed by multiple defendants, each raising an up-the-ladder immunity argument. Several factual scenarios are helpful here. For example, the court found that Defendant Kentucky Utilities Company ("KU") was immune from suit, because it had "submitted substantial evidence that the repair, removal, and replacement of power-generating equipment were regular or recurrent activities that KU typically performed with employees." *Id*. at 601. That evidence included testimony from KU's maintenance manager, who said that it performed periodic repair or replacement of power-generating equipment, and that the work was given to its own employees and sometimes contracted to other companies. *Id.* Likewise, the court found Defendant Brown-Forman Corporation was immune. *Id.* at 594-95. There, a mechanical engineer for the company stated that it was "normal and customary for Brown–Forman to renovate its bottling lines from time to time, using either employees or an outside contractor" and that "[t]he projects were not performed at fixed intervals but were usually scheduled during shutdowns for the Christmas holidays or summer vacations." *Id.* at 595. The projects included installing or replacing equipment, and usually occurred on an annual or semiannual basis. Each project included installing or replacing equipment, usually on a single bottling line.

  The court also found Defendant Allied Chemical immune from suit. *Id.* at 592. There, the plaintiff testified that he worked at the plant once, for about two months during a shut-down and re-tooling of a portion of the plant, and that no Allied employees helped with the work. Allied's former superintendent of maintenance and engineering stated that he could not say

"precisely how often pumps would be torn out and reinstalled" because it might occur one day and then not for a period of time. *Id.* Further, he stated that Allied's employees could do part of the work, and that outside contractors were used rather than employees depending on "on factors such as the project's size, the staffing available at the plant, and the time in which the job must be completed." *Id.* Even so, the court found that Fuller's testimony "provided substantial evidence that the removal and replacement of pump and motor assemblies occurred repeatedly and was work that Allied performed with employee millwrights, even on some large projects for which it also used outside contractors." *Id.*

The *Cain* court found that Defendant Reynolds Metals was not immune from suit. *Id.* at 604. There, the plaintiff worked for Reynolds for six week "removing, replacing, and installing machinery, piping and equipment." *Id.* The process was highly mechanized, consisting of the use of cranes, numerous conveyors, machines, and other equipment. There was testimony that Reynolds had "employed . . . millwrights, mechanics, and/or machinists, whose job responsibilities include the repair and maintenance of the plant's machinery and equipment" but that it hired outside contractors occasionally "to install and repair certain machinery and equipment." *Id.* The court found however that there was "no substantial evidence that [employees] would perform a six-week project to remove, replace, and install machinery, piping, and other equipment or repair cranes." *Id.*

PPG argues that the subcontracted employees were performing work that was a regular and recurrent part of PPG's trade, as PPG regularly moves and replaces its product lines and equipment. (Docket No. 32). Here, the project that PPG was completing, and the specific tasks that Mr. Smith was involved in, were both regular and recurrent in PPG's business. Finally, it notes that Mr. Smith's wages were treated as a labor expense for tax purposes and not as a

6

capitalized cost.  In response, the Plaintiffs argue that the Court should consider the project as a whole and not just examine the work that Mr. Smith was tasked with performing.  (Docket No, 34).  They note that Mr. Smith did not have experience with moving the larger pieces of equipment involved in the project.  In reply, PPG directs the Court to *Dunn v. Corning*, 575 Fed. Appx. 644, (6th Cir. 2014), where the court explained that the "inquiry must focus on the actual work being performed at the time of the injury" as opposed to the project as a whole.  *Id.* at 647.

PPG has provided substantial evidence showing that moving, replacing, or relocating equipment is a regular and recurrent part of manufacturing, as defined by the Kentucky Supreme Court in *Cain*.  *Cain,* 236 S.W. 3d at 288.  In her affidavit, Ms. Smith stated that Mr. Smith was asked to take a temporary position to operate equipment at the new facility to ensure that it was operating efficiently, and to train employees at the facility – the same work as he had performed previously.  (Docket No. 32-3, at pp. 5-8).  Further, she stated that moving scales and pumps is regular and recurrent work, as is the replacement of equipment and the work of ensuring that such equipment runs efficiently.  *Id.* at pp. 13, 14.  Over the past seven years, PPG has replaced, moved, or relocated equipment for approximately four projects.  *Id.* at pp. 15, 16.  Further, the tasks that Mr. Smith was hired to perform – operating equipment, ensuring that it worked properly, training employees at the new facilities – were all regular and recurrent parts of PPG's business.  The specific task he was involved in at the time of his injury – moving a scale – was likewise something he had done many times before.  *See Dunn*, 575 Fed. Appx. At 647 (directing courts to examine the actual work being performed at the time of the injury).  The evidence demonstrates that the work in which Mr. Smith was engaged at the time of his accident is customary to the business of PPG.  Thus, this Court finds that this work was a regular part of

PPG's business. PPG, therefore, meets the definition of "contractor" under KRS 342.610(2)(b) and is entitled to the immunity provided by KRS 342.690(1).

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, (Docket No. 32), is **GRANTED**.